

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

RMT:JGH/ICR
F. #2016R00532

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 12, 2018

By Email and ECF Filing

Honorable Robert M. Levy
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Jane Doe
Criminal Docket No. 17-48 (JBW) (RML)

Dear Judge Levy:

The government submits this letter to update the Court on two issues raised at the parties' last appearance before your Honor on September 21, 2018. First, the Court asked the Bureau of Prisons (BOP) to further address the defendant's claim regarding how much time the defendant and other female inmates are confined within their cells at the Metropolitan Correctional Center (MCC). The BOP's response, in the form of a letter to the Court, is attached hereto as Attachment A.

Second, at the hearing, defense counsel referenced a meeting she attended on June 8, 2018 with members of the U.S. Attorney's Office regarding this case and the more general issue of potential retaliation against inmates for raising concerns about their conditions of confinement. See Transcript, Sept. 21, 2018 Hearing at 10-12. Specifically, defense counsel's statements at the hearing suggested that the government told counsel that an inmate's email to a BOP staff member will be construed by the warden as "grievances for the BOP process." Id. at 11-12. This is not so.[1]

[1] As an initial matter, the June 8 meeting was part of a series of meetings that took place between defense counsel and the U.S. Attorney's Office regarding the conditions for female inmates at the Metropolitan Detention Center (MDC). The meetings did not address conditions at the MCC, where the defendant is currently confined.

Critically, at no point during the June 8 meeting or any other meeting with defense counsel did any member of the U.S. Attorney's Office or the BOP state that inmates should not follow the formal grievance process at the MDC or any other BOP facility, or that the sending of an email to a BOP staff member – including to the warden – would qualify as or substitute for the filing of a formal grievance through the grievance process. Rather, members of the U.S. Attorney's Office emphasized the importance of an inmate using the formal grievance process to address issues with their conditions of confinement because the process is essential for inmates to obtain the requested relief, as well as for BOP management to gain awareness of such issues.

The government informed defense counsel that inmates at the MDC do not need to have face-to-face discussions with any allegedly problematic staff members in order to communicate questions or concerns or to obtain the form(s) necessary to initiate the administrative grievance process. Rather, the government informed defense counsel that the inmates may use an email system that allows them to communicate electronically with relevant staff, including with the warden. The government further informed defense counsel that if an inmate is having trouble obtaining a BP-8 form – the initial form used to file a formal grievance – the inmate may ask for one using this email system.

The government also informed defense counsel that if an inmate believes that an issue is sensitive, the inmate may seek permission from the warden or the Regional Office to skip the BP-8 step and proceed to the BP-9 level and/or file his or her grievance directly with the regional office, as set forth in 28 C.F.R. § 542.14(d)(1). Notably, whether or not an issue is sufficiently sensitive is decided by the warden and/or the Regional Office. It is not up to the inmate to determine when this is the case, although an inmate is free to request this bypass when he or she believes it is appropriate.

The government also informed defense counsel that, as outlined in the MDC's publicly available Admission & Orientation Handbook, if an inmate believes that an issue is sensitive and the inmate believes he/she would be adversely affected if the complaint became known in the institution, the inmate may seek permission from the warden or the Regional Administrative Remedy Coordinator to skip the BP-8 step and proceed to the BP-9 level and/or file his or her grievance directly with the regional office, as set forth in 28 C.F.R. § 542.14(d)(1); see also Program Statement 1330.16, Administrative Remedy Program, at ¶ 7. Notably, whether or not an issue is sufficiently sensitive is decided by the warden and/or the Regional Office. It is not up to the inmate to determine when an issue is sufficiently sensitive to bypass the BP-8 step, although an inmate is free to request this bypass when he or she believes it is appropriate.

In sum, it remains the position of the government and the BOP that inmates must follow the formal grievance process to address issues with their conditions of confinement, and that this formal process includes the ability to seek to bypass the BP-8 step as described above.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By: /s/
Josh Hafetz
Ian C. Richardson
Assistant U.S. Attorneys
(718) 254-7000

cc: Defense counsel (by Email)
Clerk of Court (JWB) (by Hand)

# ATTACHMENT A



**U.S. Department of Justice**

Federal Bureau of Prisons

Legal Department

Metropolitan Correctional Center
150 Park Row
New York, New York 10007
(646) 836-6300, (646) 836-7665 (Fax)

October 3, 2018

The Honorable Robert M. Levy, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**Re:** ***U.S. v. Jane Doe*, 17-CV-48**
**Jane Doe, Reg. No. 89767-053**

Dear Judge Levy:

I write regarding Jane Doe, Reg. No. 89767-053, who is currently housed at the Metropolitan Correctional Center in New York ("MCC New York"). This letter is a follow-up to address the Court's inquiries raised at the conference on September 21, 2018. At that conference, Ms. Doe alleged the female inmates at MCC New York were locked in their cells all day on Saturdays and Sundays and only released for meals and occasional showers.

On weekdays at MCC New York, inmates are ordinarily released from their cells around 6:00 AM. They are placed back in their cells for a short time around 9:00 AM for a census accountability check. This also provides an opportunity for the inmate orderlies to clean the common areas in the unit. After the morning census check, the inmates generally remain out of their cells until approximately 1:00 PM, at which time they are placed back in their cells for another brief period during the afternoon census accountability check. They are then released until approximately 3:30 PM, at which time they are secured for the Bureau of Prisons nationwide institutional count. Count usually clears around 5:00 PM, at which time the inmates are typically released for the evening until bedtime at approximately 9:30 PM.

On weekends and holidays, there is normally no sanitation detail or morning/afternoon census checks. Instead, inmates are ordinarily unlocked about an hour later than weekdays, at approximately 7:00 AM. They typically remain out of their cells until approximately 9:30 AM, at which time they are secured for a Bureau of Prisons nationwide institutional count. Count generally clears around 11:00 AM. Inmates normally stay out of their cells until approximately 3:30 PM, at which time they are secured for another count. They are released around 5:00 PM when count clears, and they are finally locked in their cells for the night at approximately 9:30 PM.

Ms. Doe arrived at MCC New York on July 17, 2018. Agency counsel spoke with MCC New York's Captain, the Lieutenants, and the majority of correctional officers who worked a day watch or evening watch shift during July, August, and/or September. In the eleven weekends since Ms. Doe's arrival, there was only one shift where the officer recalled the female inmates being secured in their cells for about two to three hours while the Facilities Department completed some work on the unit. As mentioned at the conference, there was also one Saturday when the institution was on lockdown status. However, while the female inmates were restricted to their unit during that time, they were not confined to their cells. Otherwise, there is nothing to suggest the female inmates' freedom differed from the weekend schedule outlined above.[1]

In addition to the recollections of the Lieutenants and the officers, the Captain checked the available video footage for Saturdays and Sundays in September. The video showed the female inmates out of their cells in the common area of the unit. Similarly, a review of the available housing unit logs from Saturdays and Sundays between July 21, 2018, and September 30, 2018, indicates the unit was secured and unsecured as appropriate. In short, MCC New York is willing to investigate further if Ms. Doe can provide specific dates, but currently, there is nothing to support her assertion that the female inmates have been locked in their cells all day on weekends and released only for meals/showers.

Further, MCC New York would like to note that at the conference, defense counsel referenced a meeting between the Federal Defenders of New York, the Criminal Division of the U.S. Attorney's Office for the Eastern District of New York, and the Warden. Defense counsel represented that the Warden agreed to accept inmate-to-staff emails as formal grievances for the purpose of the BOP's Administrative Remedy Program, as set forth in 28 C.F.R. §§ 542.10-542.19. Please note that neither the Warden nor the Associate Wardens of MCC New York participated in any such meeting with defense counsel's office or the U.S. Attorney's Office. Additionally, the Warden at MCC New York wishes to clarify his position that inmate-to-staff emails do not satisfy any step of the Administrative Remedy Program (including the request for informal resolution), and if inmates are afraid of retaliation for using the process, then they may file directly with the Regional Office as provided by 28 C.F.R. § 542.14(d)(1).

If you have any questions or concerns, please feel free to call me at (646) 836-6466 or Supervisory Attorney Adam Johnson at (646) 836-6455. Thank you for your time and attention to this matter.

Sincerely,

Stephanie Scannell-Vessella
Staff Attorney
MCC New York

cc: AUSA Joshua Hafetz
Deirdre von Dornum (counsel for Ms. Doe)

---

1 Additionally, although it predates Ms. Doe's arrival, MCC New York's Legal Assistant worked an overtime daywatch (8:00 AM to 4:00 PM) shift as the housing unit officer on the female unit on two occasions in June 2018. The Legal Assistant confirmed that during her shift, the female inmates were out of their cells when she arrived until approximately 9:30 AM, and then from approximately 11:00 AM to 3:30 PM.