

U.S. Department of Justice

United States Attorney
Eastern District of New York

RMT:ICR/JGH  
F. #2016R00532

*271 Cadman Plaza East*  
*Brooklyn, New York 11201*

February 6, 2019

**TO BE FILED UNDER SEAL**

By ECF and Email

Honorable Robert M. Levy  
United States Magistrate Court  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

        Re:    United States v. Jane Doe  
                  Criminal Docket No. 17-48

Dear Judge Levy:

      During yesterday's status conference in this case, at the defendant's request and over the government's objection, the Court scheduled a bail hearing for Thursday, February 7. The government writes to oppose the defendant's motion for bail and to apprise the Court of the defendant's conduct while on presentence release, including her violation of her cooperation agreement and commission of new crimes.

      Specifically, and as discussed in greater detail below, while on release for just three months, the defendant revealed her cooperation with the government to at least one subject of an ongoing terrorism investigation and destroyed evidence of her commission of multiple violations of her bail conditions, in violation 18 U.S.C. § 1512. Then, when interviewed by this Office and the FBI about her conduct, the defendant violated 18 U.S.C. § 1001 and further violated her cooperation agreement by repeatedly providing false and misleading and inaccurate information to the government.

      The government has advised defense counsel that, earlier today, the government determined that the defendant's actions constitute a breach of her cooperation agreement. The government has also advised defense counsel that the government is exploring the filing of new criminal charges against the defendant for the new crimes she committed while on presentence release, including obstruction of justice, in violation of 18 U.S.C. § 1512, and for her false statements to law enforcement about her conduct on presentence release, in violation of 18 U.S.C. § 1001.

I. Background

In November 2016, FBI agents arrested the defendant, Jane Doe, at John F. Kennedy International Airport as she tried to leave the country, for attempting and conspiring to provide material support to a designated foreign terrorist organization, the Islamic State of Iraq and al-Sham ("ISIS"), in violation of 18 U.S.C. § 2339B(a)(1). Following her arrest, the defendant confessed that she had attempted and conspired to provide material support to ISIS, and she admitted to communicating with multiple other individuals through various online platforms including Facebook messenger and encrypted communication platforms. The defendant admitted to providing these individuals contact information for ISIS members who could help the individuals travel overseas to ISIS-controlled territory. In addition, the defendant put at least one U.S.-based ISIS supporter in touch with an ISIS member overseas who encouraged the U.S.-based individual to conduct an attack on American soil.

After multiple debriefings with the FBI and the government in which the defendant gave detailed accounts of her relationships and communications with numerous ISIS supporters, the defendant pleaded guilty in February 2017, pursuant to a cooperation agreement. Pursuant to that agreement, the defendant agreed not to disclose her cooperation with law enforcement to any person without authorization.[1]

On April 28, 2018, the defendant was ordered released on bail after the defendant made numerous allegations about the purported inadequacy of medical care at the Metropolitan Detention Center. Among the conditions under which the defendant was released was the condition that the defendant not use social media and that she not contact individuals or organizations affiliated with foreign terrorist organizations. The government and Pretrial Services subsequently learned that following her release, the defendant violated her bond conditions by, among other things, obtaining and using a laptop without Pretrial's knowledge or consent, downloading and using multiple cell phone applications without Pretrial's permission or consent, and creating and using multiple Facebook accounts under various pseudonyms to contact and attempt to contact numerous people, including individuals she previously identified to the FBI as supporters of ISIS or other extremist groups. Following a hearing on these violations in July 2018, the court revoked the defendant's bond and remanded her to the Metropolitan Correctional Center.

II. Legal Standard

Because the defendant has already pleaded guilty to conspiring to provide material support to ISIS, and is awaiting sentencing on her violation of 18 U.S.C. § 2339B(a)(1), the defendant's bail application is controlled by 18 U.S.C. § 3143(a). Under

---

[1] To preserve her ability to cooperate against her coconspirators and other ISIS supporters, the defendant was arraigned on the initial complaint and pleaded guilty to the information in a sealed courtroom. The defendant has been held in custody by the Bureau of Prisons under an alias, and the docket in this case has been sealed under the name "Jane Doe" since the defendant's arrest.

§ 3143(a), the Court "shall order" the defendant's detention, unless the Court "finds by clear and convincing evidence that the [defendant] is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c)." Federal Rule of Criminal Procedure 46(c) makes clear that, in these circumstances, "[t]he burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant." Thus, the Second Circuit has held that § 3142 and Rule 46(c) establish a "presumption in favor of detention" that the defendant is burdened to overcome "with clear and convincing evidence." United States v. Abuhamra, 389 F.3d 309, 319-20 (2d Cir. 2004). Given her conduct while on pretrial release, the defendant cannot meet her burden and she should not be released on bail because she poses a danger to the community and is a flight risk.

III. The Defendant's Conduct on Presentence Release

The government conducted an approximately six-month investigation into the scope and content of the defendant's communications and activities while free on bail. The investigation included judicially authorized searches of the defendant's cell phone, three Facebook accounts the defendant created using pseudonyms, and numerous other records. The government also interviewed the defendant with her defense counsel present on January 2, 2019. The investigation was impeded by the defendant's intentional deletion of vast amounts of her communications with multiple individuals on Facebook, which she did with the express intent of preventing their detection by Pretrial Services, the government and the Court.

Despite her attempts to cover up her actions, the investigation nevertheless revealed that while on release the defendant contacted or attempted to contact multiple people she previously identified as supporting ISIS or other terrorist groups. This includes multiple attempts to contact at least one individual against whom the defendant proactively cooperated. The defendant also contacted or attempted to contact at least three other individuals about whom she had not previously provided information to the government but who have used social media to express support for ISIS or are associated with ISIS supporters. Some of the people the defendant contacted and/or attempted to contact are subjects of ongoing terrorism investigations. In addition, the defendant made statements in some of these communications in which she expressed, at best a lack of remorse the conduct leading to her conviction, and, at worst, her continued support for ISIS.

A. The Defendant's Prohibited Communications And Destruction of Evidence

Below, the government summarizes some of the information it obtained through its investigation to demonstrates the extent and nature of the defendant's past violations of the conditions of her release and of federal criminal law.

For example, the defendant used a Facebook account she created using a false name to contact Individual 2, whom she previously identified to the FBI as a Taliban supporter located in the United States who desired to travel to jihadist-controlled territory. In a lengthy Facebook exchange on June 24, 2018, the defendant breached her cooperation agreement by revealing her cooperation to Individual 2, writing, "the fbi put me under a different name

3

because they wanted my case too be sealed from the country etc" and "they didn't want to charge me under my name so I can go back to my daily life after telling the information they want."[2]  The defendant also wrote: "i just told u no i am not going back if I serve my time just to [ ] tell the information I had" and "ever since i was arrested i dont even plan my life as good [] becuz how the heck we know i was going to arrested out fo no where [] with no warrant and all they wanted is information of whomever i [] used to know."

The defendant also searched for and initiated Facebook communications with Individual 3, whom she identified in proffer sessions as associated with United-Kingdom-based ISIS supporters linked to terrorist attacks.  Specifically, on June 13, 2018, after Individual 3 posted "Be very careful as to who you trust on here especially if they send you any links that maybe incriminating," The defendant posted the following response on Subject 3's Facebook page:  "Yea that's true that how I went to prison because some the Muslims were spies :(".  In a separate post on Individual 3's Facebook page in June 2018, the defendant wrote: "I just got released from prison [smiley face]."

The defendant also communicated with a Facebook user based in Belgium (the "Belgian") who the defendant had been in contact with prior to her arrest.  As background, in February 2016, prior to her arrest for conspiring to provide material support for terrorism, the defendant and the Belgian engaged in a multi-user Facebook conversation with an individual the defendant later identified to the government as an ISIS facilitator to whom the defendant referred people for help traveling to ISIS-controlled territory.  During her cooperation the defendant did not disclose the Belgian's identity to the government.

Following her presentence release, in June 2018 the defendant again reached out to and communicated with the Belgian in a Facebook exchange conducted mostly in Arabic. In this conversation, the defendant told the Belgian that she used to be with the Islamic State and had been in jail, to which the Belgian responded "Me too" and stated that he had also been in jail.  The defendant subsequently deleted from her own Facebook account all of her written communications with the Belgian.  Nevertheless, the government was able to obtain copies of the communications and learned that, in addition to their written exchanges, the defendant and the Belgian also engaged in an approximately 40-minute-long voice call shortly after each had identified themselves as having supported ISIS.

The government's investigation has also revealed that the defendant deleted entire Facebook conversations with numerous other Facebook users and instructed others to do the same.  During her January 2019 interview with the government, the defendant admitted that she deleted her communications to prevent Pretrial Services and the FBI from finding the messages because she knew that these communications violated her bond conditions and the terms of her cooperation agreement.  The defendant's intentional and corrupt destruction of this evidence is a violation of 18 U.S.C. § 1512.

---

[2] All quotations contained herein are as they appear in their original form with no changes made to spelling or punctuation.

B. The Defendant's False Statements Regarding Her Conduct on Presentence Release

During her interview with the government in January 2019, the defendant was truthful about certain of her activities while on presentence release, but was evasive on numerous topics and provided many answers that were incomplete, inaccurate or untruthful. Critically, by the time of her January 2019 interview with the government, the defendant knew from the government's in-court statements and filings related to her bond revocation that the government knew certain information about her activities on release and had already obtained evidence of some of her statements. Thus, at multiple points in her interview, the defendant admitted what she believed the government already knew, and denied or attempted to mislead the government about new information that the government had not previously revealed in court.

The defendant's numerous false statements in her January 2019 interview with the government constitute violations of 18 U.S.C. § 1001, and the government provides illustrative examples of some of her false statements below.

For example, the defendant breached her cooperation agreement and violated § 1001 when she repeatedly—at least four times throughout the interview—denied that she ever identified herself to anyone as "Umm Nutella" while on presentence release. Facebook records show that the defendant identified herself in writing as "Umm Nutella" to at least two individuals—including one she has previously identified to the FBI as a jihadist supporter. Specifically, on June 13, 2018, the defendant contacted Individual 3 via Facebook and wrote, "I'm umm nutella" and "I'm staying on down low" and "lie in not going to go to prison for nobody anymore." That same day, the defendant twice identified herself as Umm Nutella in Facebook communications with another Facebook account.

The defendant's use of the name "Umm Nutella"—and her denial of it—are significant. The defendant used the name during her activities in support of ISIS prior to her 2016 arrest. Moreover, as recently as her January 2019 interview with the government, the defendant stated that she associates her use of the name "Umm Nutella" with her support for ISIS, and that if she used the name, it would signify her continued support for the group.

As another example, the defendant admitted during her January 2019 interview that she had created two pseudonymous Facebook accounts, both of which the government had already disclosed to the Court and the defendant in prior bail proceedings. Yet the defendant falsely and repeatedly denied creating or using a third Facebook account that she in fact created and used while on presentence release. Again, the defendant's answers when questioned about her conduct were calibrated to admit what she knew she could not deny and to deny everything else.

C. The Defendant's Statements Denying Her Culpability for the Underlying Charges

While on release the defendant also wrote Facebook postings and messages in which she expressed continued support for and interest in ISIS, and other statements in which shed indicated that her actions leading to her conviction for providing material support to ISIS were not morally wrong.

In on example, on June 13, 2018, the defendant wrote to another individual "I didn't do any thing . . . they snitched on me." In another example, in a June 25, 2018 post using one of her Facebook Accounts registered under a fake name, the defendant wrote "…I didn't do anything wrong under Islam but stand up for my deen and got arrested for what I believe in but you have Muslim here did dangerous crimes like drugs etc but they don't want to say sh** isn't bad but temptation of this dunya got all of us!! I'm focus to beware of what it is.."

When provided an opportunity to explain such statements during her January 2019 interview with the government, the defendant at first denied making them. When confronted with some of her Facebook records containing such comments, the defendant claimed that any denials of accountability she made on Facebook were intended to cover up her cooperation with the government. The defendant's self-serving explanation is not credible and is belied by the fact that in one Facebook exchange in which she denied accountability and said she was set up, the defendant also revealed her cooperation with the government.

IV. Conclusion and Request for Sealing

Based on the above facts alone, the defendant cannot overcome her burden of establishing by clear and convincing evidence that she poses no danger to the community or risk of flight if released. Indeed, the defendant's actions in just three months on release demonstrate precisely why the presumption in favor of detention is appropriate here.

The defendant's conduct is deeply troubling. She pleaded guilty to conspiring to provide material support to ISIS. Her commission of that crime relied in large part by contacting and communicating with ISIS supporters over social media, including Facebook. When released on bail, despite explicit instructions by the Court and Pretrial Services *not* to engage in such contacts, the defendant did exactly that – repeatedly. She created multiple Facebook accounts using pseudonyms to make it more difficult to detect her actions. She contacted, attempted to contacted, and searched for numerous ISIS and other extremist supporters, including many she herself had identified to the government as such. Worse still, with at least two individuals, the defendant identified herself using the name she associates with her support for ISIS and then repeatedly lied to the government about it. The defendant also took active steps to conceal her actions from Pretrial Services, the government, and this Court, by deleting swaths of her illicit communications and telling others to do the same, raising more troubling questions about what else she was communicating about and with whom. Indeed, precisely because of her illegal destruction of this evidence, the government does not know the full scope of the defendant's contacts and communications while release.

6

As set forth above, several of the defendant's actions constitute not only breaches of her cooperation agreement but new crimes.

In sum, the defendant's conduct provides ample proof that she cannot be trusted to comply with *any* conditions of release set by this Court. The defendant's numerous violations of her terms of release, her attempts to conceal them, and the information proffered by the government herein are facts that, standing alone, preclude the defendant from carrying her burden of establishing that she is not a danger to the community or a risk of flight. The government has grave concerns that if the defendant is released on bond again, she will pose a serious danger to the public. And, given her deceptive attempts to cover up her violations and the fact that she now knows she faces a potentially far more significant sentence given the breach of her cooperation agreement, the defendant also poses a more serious risk of flight than she did before the government had determined that she had breached her cooperation agreement. Accordingly, the government submits that the Court should deny the defendant's renewed motion for bail.

Finally, because this letter discusses the defendant's past participation in criminal terrorism investigations that have not been publicly disclosed by law enforcement, remain ongoing, and involve multiple subjects who remain at liberty, the government respectfully requests that the Court file this letter under seal. See United States v. Aref, 533 F.3d 72, 82-83 (2d Cir. 2008) (national security concerns may be compelling reason justifying sealing); United States v. Doe, 63 F.3d 121, 128 (2d Cir. 1995) (holding that preserving the secrecy of an ongoing investigation is a compelling interest that courts should consider in deciding whether to seal certain parts of a proceeding).

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:     /s/
Ian C. Richardson
Josh Hafetz
Assistant U.S. Attorneys
(718) 254-7000

cc:    Defense Counsel (by Email)
       Clerk of Court (RML) (by Email)