```
 1    UNITED STATES DISTRICT COURT
      EASTERN DISTRICT OF NEW YORK
 2    --------------------------------x
                                            17-CR-048 19-CR-117(KAM)
 3    UNITED STATES OF AMERICA,
                                            United States Courthouse
 4              Plaintiff,                  Brooklyn, New York

 5              -against-                    January 5, 2021
                                            10:00 a.m.
 6    SINMYAH CEASAR,

 7              Defendant.
      --------------------------------x
 8
                     TRANSCRIPT OF CRIMINAL CAUSE FOR
 9        VIOLATION OF SUPERVISED RELEASE and CHANGE OF PLEA
            BEFORE THE HONORABLE JUDGE KIYO A. MATSUMOTO
10                   UNITED STATES DISTRICT JUDGE
                           VIA VIDEOCONFERENCE
11

12    APPEARANCES

13    For the Government:        UNITED STATES ATTORNEY'S OFFICE
                                 Eastern District of New York
14                               271 Cadman Plaza East
                                 Brooklyn, New York 11201
15                               BY:  JOSHUA G. HAFETZ, AUSA
                                      IAN C. RICHARDSON, AUSA
16

17    For the Defendant:         FEDERAL DEFENDERS OF NEW YORK
                                 One Pierrepont Plaza
18                               Brooklyn, New York, 11201
                                 BY:  SAMUEL I. JACOBSON, ESQ.
19                                    DEIRDRE von DORNUM, ESQ.

20    Court Reporter:            Georgette K. Betts, RPR, FCRR, CCR
                                 Phone:  (718)804-2777
21                               Fax:    (718)804-2795
                                 Email:  Georgetteb25@gmail.com
22

23

24    Proceedings recorded by mechanical stenography.  Transcript
      produced by computer-aided transcription.
25
```

PROCEEDINGS

1          (In open court; All present via videoconference.)

2          THE LAW CLERK:  Good morning.  This is a violation

3     of supervised release, change of plea hearing.  Case numbers

4     17-CR-048 and 19-CR-117.  United States versus Sinmyah Amera

5     Ceasar.

6          Would the government's attorney please state your

7     appearance.

8          MR. HAFETZ:  Good morning, your Honor.  Josh Hafetz

9     and Ian Richardson on behalf of the government.

10          THE COURT:  Good morning.

11          MR. RICHARDSON:  Good morning, your Honor.

12          THE LAW CLERK:  For the defendant.

13          MR. JACOBSON:  Good morning, Your Honor.  Sam

14     Jacobson and Deirdre von Dornum, Federal Defenders on behalf

15     Sinmyah Amera Ceasar.

16          THE COURT:  Good morning and thank you.

17          Ms. Ceasar, as you may know that usually you would

18     be appearing in a courtroom with your lawyers and the

19     prosecutors for your plea.  Because of the COVID-19 pandemic

20     and the CARES Act and an order of our chief judge, courts are

21     authorized to conduct proceedings by video conference.  I just

22     wanted to know if you had any objection to proceeding in this

23     manner.

24          THE DEFENDANT:  No, Your Honor.

25          THE COURT:  All right, ma'am, and just to confirm,

PROCEEDINGS

1    do you speak and understand English without any difficulty?

2            THE DEFENDANT:  Yes.

3            THE COURT:  Would you please raise your right hand

4    and take an oath to tell the truth.

5            (The defendant, SINMYAH AMERA CEASAR, was

6    sworn/affirmed.)

7            THE DEFENDANT:  Yes, Your Honor.

8            THE COURT:  Thank you.

9            Ms. Ceasar, before I decide whether to accept your

10   guilty plea to a violation of a condition of your supervised

11   release, there are a number of questions that I will have to

12   ask you in order to assure myself that your plea is valid.  So

13   if you don't understand my question or if you need me to

14   rephrase or if you would like to consult with your lawyer,

15   please just let me know.

16           All right, ma'am?

17           THE DEFENDANT:  Yes.

18           THE COURT:  Also, do you understand that because

19   you've taken an oath to tell the truth your answers to my

20   questions will be subject to penalties of perjury or making

21   false statements if you do not answer truthfully?

22           THE DEFENDANT:  Yes, Your Honor.

23           THE COURT:  Ma'am, would you please tell me your

24   full legal name.

25           THE DEFENDANT:  Sinmyah Amera Ceasar.

PROCEEDINGS

1          THE COURT:  Thank you, ma'am.  How old are you?

2          THE DEFENDANT:  Twenty-six.

3          THE COURT:  Would you tell me please what schooling

4    or education you've had.

5          THE DEFENDANT:  I'm enrolled online GED.

6          THE COURT:  You're in the process of obtaining your

7    GED, ma'am, is that what you said?

8          THE DEFENDANT:  Yes.

9          THE COURT:  How far did you go in school before you

10   left?

11          THE DEFENDANT:  I dropped out in the 12th grade, in

12   my senior year before graduation.

13          THE COURT:  You're very close.  Good luck with that.

14          THE DEFENDANT:  Thank you.

15          THE COURT:  Ma'am, do you have any difficulty

16   speaking, understanding, reading or writing English?

17          THE DEFENDANT:  No, Your Honor.

18          THE COURT:  Mr. Jacobson, have you been able to

19   communicate effectively with your client in the English

20   language?

21          MR. JACOBSON:  Yes, I have.

22          THE COURT:  Have you detected any difficulty on her

23   part with reading, writing or understanding English?

24          MR. JACOBSON:  No.

25          THE COURT:  Ms. Ceasar, are you presently or have

PROCEEDINGS

1   you recently been under the care of any physician or

2   psychiatrist?

3            THE DEFENDANT:  No, Your Honor.

4            THE COURT:  In the past 24 hours have you taken any

5   narcotic drugs, medicine or pills or consumed any alcohol?

6            THE DEFENDANT:  No, your Honor.

7            THE COURT:  Have you recently been hospitalized or

8   treated for any mental or emotional problems or any addiction

9   to alcohol or narcotics?

10           THE DEFENDANT:  No, your Honor.

11           THE COURT:  Do you feel your mind is clear, ma'am?

12           THE DEFENDANT:  Yes.

13           THE COURT:  Do you understand what is going on in

14  this proceeding, why you are here?

15           THE DEFENDANT:  Yes.

16           THE COURT:  Mr. Jacobson, have you discussed the

17  matter of pleading guilty with your client?

18           MR. JACOBSON:  Yes, your Honor.

19           THE COURT:  Does she understand the rights that she

20  would be waiving if she were to plead guilty?

21           MR. JACOBSON:  She does.

22           THE COURT:  In your view, is Ms. Ceasar capable of

23  understanding the nature of the proceedings we're holding

24  right now?

25           MR. JACOBSON:  Yes.

*GEORGETTE K. BETTS, RPR, FCRR, CCR*
*Official Court Reporter*

PROCEEDINGS

1          (Background interference.)

2          THE COURT:  Will everybody else who is not speaking

3  currently please mute your telephones or your microphones,

4  please.

5          Mr. Jacobson, have you advised your client of the

6  maximum and minimum sentence and fine that could be imposed if

7  she were to plead guilty to the violation of supervised

8  release?

9          MR. JACOBSON:  Yes, your Honor.

10          THE COURT:  Ms. Ceasar, as you know, you do have a

11  right to be represented by counsel.  You're here today with

12  Mr. Jacobson and Ms. von Dornum, have you had an opportunity

13  to discuss the violation of supervised release with your

14  lawyers?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  And are you satisfied with the

17  representation that you've received from your attorneys?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Do you understand the charges in the

20  violation of supervised release report dated November 3rd,

21  2020?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Ma'am, I just want to confirm that it is

24  my understanding that you intend to plead guilty to Charge One

25  and Charge Three; is that correct?

PROCEEDINGS

1           THE DEFENDANT:  Yes, your Honor.

2           THE COURT:  All right.  Let me ask you whether you

3    understand the charges to which you intend to plead guilty.

4    Do you understand charges with which you are going to plead

5    guilty?

6           THE DEFENDANT:  Yes, your Honor.

7           THE COURT:  Just to recap, Charge One -- I'm just

8    summarizing -- charges that between August 13th and

9    October 16th of 2020 you violated the special condition of

10   your supervised release that you shall report to probation any

11   and all electronic communication service accounts and that

12   included any accounts used for communication, dissemination or

13   storage of digital media files whether audio, video or other

14   images and this included mail accounts, social media accounts

15   and cloud storage accounts.

16           The charge is that between August 13th and

17   October 16th of last year you downloaded and accessed

18   unreported applications and accounts, including social media

19   accounts with cellular phones that you had been granted

20   permission to have.  The charge is that you neither received

21   permission or disclosed the account, the downloading of these

22   accounts to probation and you did not provide identifiers or

23   passwords to those accounts.

24           A number of these accounts are listed in the

25   violation of supervised release report, I don't think we need

PROCEEDINGS

1    to go over them here but there are a number of them.

2            Are you aware of those accounts, ma'am?

3            THE DEFENDANT:  Yes, your Honor.

4            THE COURT:  All right.  In addition, ma'am, Charge

5    Three charges that between August 26th and September 25th,

6    2020 you violated a condition that you not associate with or

7    have contact with anyone who is either engaged in criminal

8    activity or someone who has been charged with a felony unless

9    you first are granted permission to do so by your probation

10   officer.

11           Charge Three states that you did have contact with

12   two individuals who have been convicted of felonies.

13   Specifically, Mr. Demetrious Morris, who is -- with whom you

14   are alleged to have corresponded by U.S. mail, and Illa Little

15   Howard, with whom you are alleged to have communicated by

16   phone and video.  Both of these individuals are serving

17   federal sentences for various federal crimes.  Now the charge

18   states you did not have permission to have contact with these

19   individuals and you did not report your contact with these

20   individuals to your probation officer.

21           Do you understand that charge, ma'am?

22           THE DEFENDANT:  Yes, your Honor.

23           THE COURT:  Now, you do have the right to persist in

24   your plea of not guilty to the charges of the violation of

25   supervised release.

PROCEEDINGS

1          You understand?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  If you do persist in your plea of not

4    guilty, you would have the right to a hearing with the

5    assistance of your attorneys on the charges contained in the

6    violation of supervised release report dated November 3rd and

7    entered on the docket as document number 129.

8          Do you understand?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  At the hearing you would be able to

11    appear and present evidence, although you would have no

12    obligation to present evidence, and you would have the right

13    to question adverse witnesses and to object to evidence

14    offered against you by the government.

15          Do you understand?

16          THE DEFENDANT:  Yes. ma'am.

17          THE COURT:  When I say "you" I mean your lawyers

18    would have the right to do this on your behalf.  The

19    government would have to prove the violation by a

20    preponderance of the evidence, meaning evidence that makes it

21    more probable than not that you committed the offense.

22          Do you understand?

23          THE DEFENDANT:  Yes.

24          THE COURT:  In addition, during the hearing the

25    witnesses for the government would have to come to court and

GEORGETTE K. BETTS, RPR, FCRR, CCR
Official Court Reporter

PROCEEDINGS

1  testify in your presence and your lawyers would have the right

2  to cross examine those witnesses and to object to the evidence

3  offered against you by the government.

4          Do you understand?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  And if you chose to do so, you could

7  present evidence and ask the Court to compel the appearance of

8  witnesses to come to court and testify in your defense.

9          Do you understand that?

10         THE DEFENDANT:  Yes, your Honor.

11         THE COURT:  At the hearing you would have the right

12  to testify, although you would not be required to testify.

13  The United States Constitution protects your right not to

14  incriminate yourself.

15         You understand?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  If you do plead guilty to the charges

18  and I accept your guilty plea, you will be giving up your

19  right to a hearing and the other rights that we've just

20  discussed, there will be no further hearing of any kind and no

21  right to appeal from the judgment of guilty entered against

22  you on these charges.  You would essentially be convicted

23  based upon your own plea of guilty during this proceeding that

24  we are holding right now and the government will be free of

25  any responsibility to prove anything about what you did with

PROCEEDINGS

1    regard to these charges.

2              Do you understand?

3              THE DEFENDANT:  Yes.

4              THE COURT:  If you do plead guilty I will have to

5    ask you questions and ask you to tell me what you did with

6    regard to the charges in order to satisfy me that you are in

7    fact guilty of the charges to which you seek to plead guilty.

8    You will have to answer my questions truthfully and completely

9    and acknowledge your guilt.

10             Do you understand?

11             THE DEFENDANT:  Yes.

12             THE COURT:  In that process you will be giving up

13   your right not to incriminate yourself.

14             Do you understand?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  Are you willing to give up your right to

17   a hearing and the other rights I've just described?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Now has the government and Ms. Ceasar's

20   counsel entered into an agreement?

21             MR. HAFETZ:  Joshua Hafetz, your Honor.  Yes, your

22   Honor we have.

23             THE COURT:  Would you describe the nature of the

24   agreement, please.

25             MR. HAFETZ:  The agreement, your Honor, simply is

12

PROCEEDINGS

1    that the defendant will plead guilty to violations number one

2    and number three, as your Honor pointed out.  The government

3    would move to dismiss, after the -- at sentencing the open

4    violation of number two, which is the only remaining

5    violation.

6            The parties have also agreed to ask for a sentencing

7    date in early March.  The government is continuing to

8    investigate Ms. Ceasar's conduct while on release and in order

9    to give a full picture to the Court the more time -- that

10   additional time is necessary.  And I believe, I don't want to

11   speak for defense counsel, they also wanted the additional

12   time in order to prepare their sentencing submission and to

13   review the evidence.

14           THE COURT:  Thank you.

15           Mr. Jacobson, do you dispute the government's

16   description of the agreement between the government and your

17   client, sir?

18           MR. JACOBSON:  No, your Honor, we're in agreement

19   with that.

20           THE COURT:  All right.  Thank you.

21           Ms. Ceasar, I want to confirm that you are in fact a

22   U.S. citizen, we need not address immigration consequences.

23   Are you a U.S. citizen, ma'am?

24           THE DEFENDANT:  Yes, your Honor.

25           THE COURT:  Do you have any questions about the

PROCEEDINGS

1    charge to which you intend to plead guilty, that is the Charge

2    One and Three?

3            THE DEFENDANT:  No, your Honor.

4            THE COURT:  I'm going to turn your attention to

5    page 15 of the violation of supervised release report which

6    sets forth the penalties that you may face if you do plead

7    guilty and you are then going to be sentenced.

8            Under the criminal code 18 U.S. Code, Section

9    3583(e)(2) for Charges One and Three, I may continue you on

10   supervised release with or without modifying the conditions

11   that you currently have.  I may also extend your supervised

12   release term if less than the maximum supervised release was

13   imposed.  Alternatively, I may revoke your supervised release

14   and impose a term of incarceration of up to two years on any

15   such revocation, under Section 3583(e)3.  I may also order a

16   new term of supervised release under Section 3583(h).  The new

17   term of supervised release, after you are convicted of a

18   violation, may be up to the maximum term of supervised release

19   that was authorized at the time of your original sentencing,

20   which was life, a life term of supervised release minus any

21   custody ordered on a prior violation or the current violation.

22           Do you understand, ma'am?

23           THE DEFENDANT:  Yes, your Honor.

24           THE COURT:  The other thing I wanted to advise you

25   of is that under the Sentencing Reform Act of 1984, the United

PROCEEDINGS

1    States Sentencing Commission issued guidelines that judges

2    consult in determining a sentence in a violation of supervised

3    release case.  Although the guidelines are not binding, they

4    will be something that I will consult in deciding your

5    sentence.

6            The guidelines provide a range of sentence within

7    the statutory minimum and maximum, and in addition to those

8    factors, I'll be considering certain factors under the

9    criminal code 18 Code U.S., Section 3553.

10           Now the guidelines provision that would apply in

11   your case, would -- again they are non-binding.  The

12   guidelines classify these violations as a Grade C violation,

13   which provides I may revoke your supervised release term and

14   impose a custodial term in prison or extend or modify your

15   term of supervised release.

16           Based on your criminal history category at the time

17   you were originally sentenced, you were in Criminal History

18   Category VI and therefore the custodial term for a violation

19   of either Charge One or Three -- under Charge One or Three

20   would be eight to 14 months.  You may satisfy your minimum

21   term of eight months by a term of custody of at least four

22   months in prison followed by supervised release with a special

23   condition that you reside for four months in a community

24   confinement or under home detention.

25           Have you discussed these sentencing possibilities

PROCEEDINGS

1    with your lawyer, ma'am?

2                    THE DEFENDANT:  Yes, your Honor.

3                    THE COURT:  The other thing I should advise you of,

4    as set forth in the violation of supervised release report,

5    the Probation Department regards your conduct, your violation

6    as being very serious and presenting a danger to the community

7    and the Probation Department is recommending a custodial

8    sentence of 12 months followed by 10 years of supervised

9    release with special conditions that are similar to those that

10   were imposed originally.

11                   Have you discussed the Probation Department's

12   sentencing recommendation, which is only a recommendation,

13   it's not binding on anybody, but have you discussed that with

14   your lawyers, ma'am?

15                   THE DEFENDANT:  Yes, your Honor.

16                   THE COURT:  Now, before you are sentenced I will be

17   asking the Probation Department to give me an updated report

18   on your progress with regard to your living situation, your

19   education, your job possibilities and your compliance with

20   your supervised release term.  Your lawyers will have the

21   ability to object to or correct any of the information

22   reported by probation and the government will also have an

23   opportunity to express its views.  In addition, both your

24   lawyers and the government will have an opportunity to make

25   submissions which would advocate for a particular sentence.

PROCEEDINGS

1            Now, once I review the Probation Department's

2    updated presentence report as well as your lawyers'

3    submissions and the government's submissions I will make my

4    own independent advisory guideline calculation, and I do have

5    the authority to impose a sentence that is more severe or less

6    severe than that called for by the guidelines.

7            Do you understand?

8            THE DEFENDANT:  Yes, your Honor.

9            THE COURT:  In addition, you probably were advised

10   of this previously but it's been a long time since your

11   sentencing, parole in the federal sentence has been abolished.

12   If you were sentenced to prison you will not be released on

13   parole.

14           Do you understand?

15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  Mr. Jacobson, do you agree generally

17   with the government's -- I should say the Probation

18   Department's advisory guidelines calculation as set forth in

19   the violation of supervised release report?

20           MR. JACOBSON:  Yes, I do.

21           THE COURT:  All right.  Ms. Ceasar, even though your

22   lawyer agrees generally with the calculations that are in your

23   violation of supervised release report, those calculations

24   could be incorrect.  Again, I will have to independently

25   calculate those under the -- the levels under the guidelines

PROCEEDINGS

1    and apply the statutory factors.  If you receive a sentence

2    that is not what you would expect or hope for, that will not

3    be a basis for you to withdraw your guilty plea to the Charges

4    One and Three.

5              Do you understand?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  Do you have any questions that you'd

8    like to ask your lawyers or me about the proceedings or the

9    charges or anything else relating to this matter?

10             THE DEFENDANT:  No, your Honor.

11             THE COURT:  Are you ready to plead, ma'am?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Mr. Jacobson, do you know of any reason

14   why Ms. Ceasar should not plead guilty to Charges One and

15   Three?

16             MR. JACOBSON:  No.

17             THE COURT:  Ms. Ceasar, what is your plea, guilty or

18   not guilty to Charge One?

19             THE DEFENDANT:  Guilty.

20             THE COURT:  And what about with regard to Charge

21   Three?

22             THE DEFENDANT:  Guilty.

23             THE COURT:  Ma'am, are you making the plea of guilty

24   to Charges One and Three voluntary and of your own free will?

25             THE DEFENDANT:  Yes, your Honor.

PROCEEDINGS

1          THE COURT:  Has anyone threatened or forced you to

2    plead guilty?

3          THE DEFENDANT:  No, your Honor.

4          THE COURT:  Other than the agreement that we talked

5    about earlier with the government, did anyone make any promise

6    to you that has caused you to plead guilty?

7          THE DEFENDANT:  No, your Honor.

8          THE COURT:  Did anyone make any promise to you about

9    what your sentence will be?

10          THE DEFENDANT:  No, your Honor.

11          THE COURT:  All right.  Well, let me do this then,

12    ma'am, I'm going to ask you start with charge number one which

13    is the charge regarding your failure to report all electronic

14    communication accounts and provide passwords to your probation

15    officer.

16          Would you please tell me what you did, ma'am.

17          THE DEFENDANT:  Between August 13 and October 16, I

18    downloaded a number of applications from my --

19          (Court reporter requests clarification.)

20          THE COURT:  Ms. Ceasar, do you mind starting over

21    with regard to charge number one.

22          THE DEFENDANT:  Between August 13 and October 16th I

23    downloaded a number of applications on my monitored smartphone

24    now that I didn't have accounts to.

25          (Background interference.)

PROCEEDINGS

1          THE COURT REPORTER:  Your Honor, I cannot hear her.

2          THE DEFENDANT:  Between August 13 and October 16 I

3    associated with people I knew had felony convictions.  I did

4    not have permission from my probation officer to do so.

5          THE COURT:  Were you able to hear that, Georgette?

6          THE COURT REPORTER:  I wasn't able to hear her.

7          THE COURT:  I'm sorry to ask, Ms. Ceasar, let's

8    start again with Charge One.  I couldn't hear much of what you

9    said.  I think somebody doesn't have their mic muted.  Someone

10   who may be listening or participating on this I would ask you

11   again to please mute your microphone or we're just going to

12   have to take other steps to get a clean record on Ms. Ceasar's

13   plea.

14          Would you please again, ma'am, tell me what you did

15   first with Charge One.  Thank you.

16          THE DEFENDANT:  Between August 13th and October 16th

17   I downloaded a number of applications for my monitored

18   smartphone and created passwords on some of those apps.  I did

19   not report these apps and accounts to my probation Officer.

20          Also, between August 13 and October 16 --

21          THE COURT:  Wait, wait.  Let's talk about charge

22   number one before you move on.  You said you did not report

23   these accounts to your officer.

24          Did you know that you were obligated to do so, that

25   is, to report and disclose to the probation officer in fact or

PROCEEDINGS

1    seek his or her permission before you downloaded?

2                THE DEFENDANT:  Yes, your Honor.

3                THE COURT:  And did you also know that you were to

4    not only disclose accounts that you did download, but that you

5    were also to provide passwords to those accounts?

6                THE DEFENDANT:  Yes, your Honor.

7                THE COURT:  And did you provide passwords to those

8    accounts, ma'am?

9                MR. JACOBSON:  Your Honor, I don't think that's an

10   element of Charge One, I think that's Charge Two now.  The

11   passwords is a separate count in Charge Two.

12               THE COURT:  Well, okay.  I mean, the facts, as they

13   are generally described, require that she first get permission

14   of her officer to download any accounts and that she disclose

15   any account that she downloads, and that obviously if the

16   officer doesn't have the password it's difficult to understand

17   and monitor the supervisee's activities.  We'll just stick

18   with the fact that Ms. Ceasar knew she had not sought

19   permission from her officer; is that correct?

20               THE DEFENDANT:  Yes, your Honor.

21               THE COURT:  You didn't seek permission from your

22   officer to downloaded accounts, correct?

23               THE DEFENDANT:  No, your Honor.

24               THE COURT:  But you did it any way; is that correct?

25               THE DEFENDANT:  Yes.

21

PROCEEDINGS

1           THE COURT:  All right.  And you said between

2    August 13 and October 16, is that 2020, ma'am?

3           THE DEFENDANT:  Yes, sorry, yes.

4           THE COURT:  All right, thank you.

5           Is there anything else that either the government or

6    Mr. Jacobson would like to add or hear from Ms. Ceasar

7    regarding her allocution to Charge One?

8           MR. HAFETZ:  No, your Honor, I believe you covered

9    it for violation one.

10          THE COURT:  Mr. Jacobson.

11          MR. JACOBSON:  Nothing from Ms. Ceasar.  Thank you.

12          THE COURT:  Let's go to Charge Three, ma'am.  This

13   is the issue about associating with people who are engaged in

14   criminal activity or who have been convicted of criminal

15   activity.

16          Please speak slowly.  Thank you.

17          THE DEFENDANT:  Yes, yes.  Between August 13th and

18   October 16th I communicated with people that I knew had felony

19   convictions.  I did not have permission from my probation

20   officer to do so.

21          MR. JACOBSON:  And it was 2020.

22          THE DEFENDANT:  And it was 2020.

23          THE COURT:  All right.  Now you gave different dates

24   of August 13th through October 16th, the charge is between

25   August 26th and September 25th, 2020.  Are the parties

PROCEEDINGS

1    satisfied that Ms. Ceasar's allocution is that a more

2    expansive date range is accurate?

3              MR. HAFETZ:  The government is satisfied with that,

4    your Honor.

5              THE COURT:  Mr. Jacobson.

6              MR. JACOBSON:  Yes, we are.

7              THE COURT:  All right, ma'am.  And you said you knew

8    that these individuals with whom you communicated had been

9    convicted.

10             Did you also know that you were forbidden as a

11   condition of your supervised release that you not communicate

12   with such persons who had been convicted of crimes?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  And did you know that if you were to

15   communicate with such individuals who had been convicted of

16   crimes that you were supposed to first seek permission and

17   obtain permission of your probation officer?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  And did you obtain the permission of

20   your probation officer before communicating with the

21   individuals who had been convicted of crimes?

22             THE DEFENDANT:  No, your Honor.

23             THE COURT:  Is there anything else that either the

24   government or the defense would like to add or hear from

25   Ms. Ceasar regarding her allocution?

PROCEEDINGS

1          MR. HAFETZ:  Not from the government, your Honor.

2    Thank you.

3          MR. JACOBSON:  And not from Ms. Ceasar either.

4          THE COURT:  Okay.  Ms. Ceasar, I think you did

5    confirm the dates for Charge Three were also occurring in

6    2020; is that correct?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  All right.  Ms. Ceasar, based upon the

9    information that you've provided I find that you are acting

10   voluntarily, that you fully understand your rights, and the

11   consequences of your plea and that there is a factual basis

12   for your plea of guilty to Charge One and Three of the

13   violation of supervised release report.

14          I understand that you are going to be continuing

15   your supervision with your officer and, government, you're not

16   seeking any new conditions, are you, at this time prior to

17   sentencing?

18          MR. HAFETZ:  Not at this time, your Honor, no.

19          THE COURT:  All right.

20          THE PROBATION OFFICER:  Your Honor, Mike Imrek from

21   Probation.  If I can interject on that request.  As of right

22   now I know the government and defense counsel is seeking

23   additional time to investigate or send letters for sentencing

24   purposes, my only request would be that the original order of

25   home confinement with location monitoring is due to complete

PROCEEDINGS

1    on February 5th, 2021.  I would request that that be extended

2    until the time of sentencing.

3              THE COURT:  Is there any objection from any party to

4    extend Ms. Ceasar's confinement with location monitoring?

5              MR. HAFETZ:  No, your Honor, we would support the

6    request.

7              THE COURT:  Mr. Jacobson?  Mr. Jacobson?

8              MS. von DORNUM:  We just lost him, your Honor, but

9    we have no objection to probation's request.

10             THE COURT:  I want to make sure, all right.  We lost

11   him because he lost the connection or --

12             MS. von DORNUM:  I think so.  They're down the hall,

13   I can go get Ms. Ceasar.

14             THE COURT:  I just want to confirm that she's all

15   right with that.  Thank you.

16             MS. von DORNUM:  Okay.

17             (Pause in proceedings.)

18             MR. JACOBSON:  Apologies for that.  We got

19   disconnected somehow.

20             THE COURT:  All right.  Mr. Jacobson, I was in the

21   process of confirming, and Ms. von Dornum has confirmed,

22   that the defendant does not object to continuing Ms. Ceasar's

23   home confinement with location monitoring.  I just want to

24   confirm that and Ms. Ceasar, Ms. von Dornum.

25             MR. JACOBSON:  I would confirm whatever

PROCEEDINGS

1    Ms. von Dornum's answer was on that question.  I assume she

2    had no objection to it.

3         THE COURT:  She did not.

4         All right.  We will continue the condition of

5    Ms. Ceasar's home confinement with location monitoring up

6    until the date of sentencing.  I have set the sentencing date

7    for March 16th, 2021 at 11 o'clock a.m.  Now let's set a date

8    where I can hear from you, if I could.

9         Mr. Imrek, when do you think you would be able to

10   provide an updated PSR?  Just choose a date in late February.

11        THE PROBATION OFFICER:  Your Honor, I would update

12   the Court based on the -- the only information we wouldn't

13   have in the report that's in front of the Court now would be

14   her updated status in the community in terms of work, how

15   she's doing in treatment, so it's not that lengthy of a

16   report.  I can have it done -- whatever is convenient for the

17   rest of the parties, that's not too difficult.

18        THE COURT:  All right.  May I ask you then for

19   February 19th.

20        THE PROBATION OFFICER:  No problem.

21        THE COURT:  So I'll understand then how she's

22   progressed with her GED program, her work issues, her living

23   situation and her compliance with the conditions by

24   February 19th.

25        THE PROBATION OFFICER:  Your Honor, I'm sorry to cut

PROCEEDINGS

1    you off.  The only thing you would not have, to my knowledge,

2    is status of her GED program, because to my knowledge she has

3    no access to the internet with the exception of being at her

4    attorneys' office, so there should not be any update in

5    regards to that unless she is completing her GED program at

6    the Federal Defenders office.

7              THE COURT:  Well, wouldn't the Federal Defenders be

8    able to advise me whether she is appearing for the courses and

9    whether she, hopefully, achieves her GED?  Would the Federal

10   Defenders be able to do that?

11             MR. JACOBSON:  We can, your Honor.  With probation's

12   permission we are happy to set up time slots for Ms. Ceasar to

13   come into our office and use the internet for the purpose of

14   any training and education and her GED testing.

15             THE COURT:  All right.  Thank you.

16             MR. JACOBSON:  And also one additional thing, her

17   internship with an individual who runs a mosque under the Wise

18   Network she's participating in for a few months now but needs

19   internet access for.

20             THE COURT:  So she would do that at your offices,

21   sir?

22             MR. JACOBSON:  Yes, your Honor, and probation is

23   aware of that.

24             THE COURT:  So she will use computers at the Federal

25   Defenders for her internship and GED or other courses, right?

PROCEEDINGS

1          MR. JACOBSON:  Yes, Judge.

2          THE COURT:  All right.  So by February 19th we'll

3    hear from the probation officer and then I'd like to get any

4    objections or corrections to the updated PSR by February,

5    let's say, the 24th please.  And -- well, I'll give you until

6    the 26th if the government and probation could respond

7    simultaneously to that.  Can you do that by the 26th, counsel?

8          MR. JACOBSON:  Yes, Judge.

9          MR. RICHARDSON:  Yes, your Honor.

10          THE COURT:  All right.  Then I suppose any reply

11    would come in, you know, if you wanted to respond to issues

12    about the PSR, please weigh in by March 3rd and then the

13    sentencing submissions are going to be due as follows:

14          The defense submissions by March 8th.

15          The government's responses by March 12th.

16          Any -- do you think you want to reserve a reply,

17    counsel?

18          MR. JACOBSON:  Yes, we'd like to.  Thank you, Judge.

19          THE COURT:  All right.  Well, then I'll give you

20    until March 15th.  Maybe I'm going to push back your

21    sentencing date just a little bit.  Let me just double check

22    my calendar.  One moment.  Can we do sentencing March 18th

23    instead please, March 18th at 11.  That way I'll have enough

24    time to review all of the parties' submissions.

25          MR. RICHARDSON:  Your Honor, I have a conflict on

PROCEEDINGS                                    28

1   the 18th, is it possible to do it on the 19th?

2              THE COURT:  Yes.  Let me just double check.

3              The 19th is clear.  Is that all right with the

4   defense?

5              MR. JACOBSON:  Unfortunately, Judge, I can only do

6   the afternoon on the 19th if that possible.

7              THE COURT:  All right, we're free on the 19th.

8              Now, maybe we'll do this in person, I don't know

9   what the status of our city's and country's COVID-19

10  vaccination program will be, we can schedule it for video

11  unless the defendant would prefer to try to schedule this for

12  in person.  What would you prefer?

13             MR. JACOBSON:  We do have a preference for in

14  person, if possible so perhaps we could set it down for that

15  and if it is impossible as it gets closer we can figure out a

16  different plan.

17             THE COURT:  All right.  What time, Mr. Jacobson?

18  You said the afternoon of March 19th, what time?

19             MR. JACOBSON:  1 p.m. is best, any time after one if

20  that works for everyone else.

21             THE COURT:  1 o'clock is fine with us.  Is that all

22  right with everybody else March 19th at 1 o'clock.

23             MR. RICHARDSON:  Yes, your Honor.

24             THE COURT:  All right.  March 19th --

25             MR. JACOBSON:  Yes, your Honor.

*GEORGETTE K. BETTS, RPR, FCRR, CCR*
*Official Court Reporter*

PROCEEDINGS

1          THE COURT:  Defense sentencing submissions due

2    March 8th, government's due March 12, defense reply

3    March 15th, sentencing March 19th at 1.

4          I just remind you, your objections and corrections

5    to the PSR should be served on opposing counsel, probation and

6    the Court.  You don't need to upload them to ECF.

7          With regard to the sentencing submissions, they

8    could be submitted via ECF.  If there are sensitive things to

9    talk about, you can file a redacted version on the public

10   docket and a sealed version for attorneys' eyes, probation's

11   eyes and my eyes only and -- well, maybe perhaps just serve

12   probation with your sentencing submissions that are not

13   redacted, all right.

14         Is there anything else I need to address at this

15   time?

16         MR. RICHARDSON:  Nothing from the government, your

17   Honor.  Thank you.

18         MR. JACOBSON:  AND not from Ms. Ceasar.

19         THE COURT:  Thank you.  Everybody take care, stay

20   well.

21         Thank you to the court reporter for your time.

22         MR. JACOBSON:  You too.  Happy New Year everyone.

23         MS. von DORNUM:  Thank you.

24         MR. RICHARDSON:  Thank you.

25         THE COURT:  Bye.

PROCEEDINGS

1          (Matter concluded.)

2                    *    *    *    *    *

3  I certify that the foregoing is a correct transcript from the

4  record of proceedings in the above-entitled matter.

5  s/ Georgette K. Betts              January 30, 2022
   GEORGETTE K. BETTS                 DATE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25