**Federal Defenders**
OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza -16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1204 Fax: (718) 855-0760

---

**Tamara Giwa**
*Executive Director and*
*Attorney-in-Chief*

*Eastern District of New York*
Michelle A. Gelernt
*Attorney-in-Charge*

December 12, 2024

By ECF and Electronic Mail
The Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

  Re: <u>United States v. Sinmyah Amera Ceasar</u>, 17-cr-48 / 19-cr-117 / 22-cr-459 (KAM)

Dear Judge Matsumoto,

  We write in response to the Court's order of December 11, 2024 advising that the Court intends to proceed on December 12, 2024 with the sentencing on the three felony convictions on Dockets 17-cr-48, 19-cr-117, and 22-cr-459, and directing that if any party wishes to state why the sentencing should not go forward based on the mandate of the Second Circuit, they should advise the Court in writing by 10 a.m. today. *See* 17-cr-48/19-cr-117/22-cr-459, Docket Entry dated 12/11/2024.

  The defense does not believe the sentencing should go forward today on the felony conviction on Docket 22-cr-459, and, because of the issues of concern regarding that conviction, we further believe it would be prudent to hold off on sentencing on the other two dockets until these issues are fully briefed.

  The sentencing on Docket 22-cr-459 was not within the mandate of the Second Circuit. Instead, this conviction came about <u>after</u> the Second Circuit vacated the sentence on the two earlier felony convictions and remanded for resentencing. If, as we now believe, based on Probation's motion to withdraw the violations of supervised release and our reading of the relevant case law, particularly *United States v. Lipscomb*, 66 F.4th 604 (5th Cir. 2023) and *United States v. Thomas*, 135 F.3d 873, 876 (2d Cir. 1998), Ms. Ceasar's term of supervised release was voided by the Second Circuit's vacating the sentence, and any "violation" conduct committed after her release from prison on July 28, 2020 cannot be considered by this Court in her resentencing on Dockets 17-cr-48 and 19-cr-117, then there is real reason to question whether her conduct in traveling to New Mexico on August 25, 2021, rather than appearing by video for a status conference constitutes a "failure to appear" within the meaning of 18 U.S.C. § 3146, the offense for which she was convicted on Docket 22-cr-459. We need additional time to thoroughly research the factual and legal issues in this apparent Gordian knot, but our concerns include:

(1) The conference on August 25, 2021 was scheduled by this Court, prior to the Second Circuit's decision, in order to address a number of pending issues regarding supervised release. *See* 17-cr-48/19-cr-117, Docket Entry dated 07/29/21. If the term of supervised release was voided and any "violative" conduct wiped clean, *see Thomas*, 135 F.3d at 876, then does not appearing at a conference to address these violations constitute a new crime?

(2) Section 3146, the failure to appear statute, criminalizes the failure to appear if a person "[has] been released under this chapter" and "fails to appear before a court as required by the conditions of release." In trying to think through, as outlined in issue 1, the consequences for failure to appear for

a supervised release conference, if that supervision was void, we then began to question whether Ms. Ceasar was "released under this chapter" and/or whether she was "required by the conditions of release" to appear. "[T]his chapter" refers to "Chapter 207" governing release and detention pending judicial proceedings. But it seems that Ms. Ceasar was never released under Chapter 207. When she was released from prison on July 28, 2020, she began supervised release (which is not governed by Chapter 207; it is governed by Chapter 227.). After the initial violation of supervised release specifications were filed, she was arraigned on those specifications, on November 20, 2020, but no release proceeding was held, no bond was set and no bail warnings were given, so, once again, Ms. Ceasar was not released under Chapter 207. *See* ECF No. 132 (Minute Order). When she pleaded guilty to two of the violations on January 5, 2021, again no bail was set and no bail warnings given. *See* ECF No. 133 (Minute Order). No condition of release requiring her to appear in court was set. Accordingly, it appears she was neither "released under this chapter" nor "required" to appear "by the conditions of release" and, thus, did not violate Section 3146. *See, e.g., United States v. Bodiford*, 753 F.2d 380 (5th Cir. 1985) (defendant who was never released within the meaning of the Bail Reform Act cannot be guilty of failing to appear for trial); *United States v. Davis*, 114 F.3d 400 (1997) (defendant who received detailed bail warnings about consequences of committing another crime while on bail subject to enhanced penalty under 18 U.S.C. § 3147).

Given these concerns, once we have time to fully research the issues, we may move to withdraw Ms. Ceasar's plea to failure to appear (Docket 22-cr-459) and we will likely contest whether the penalties of 18 U.S.C. § 3147 are applicable. Because Section 3147 requires a consecutive sentencing term to any other sentence imposed, the question of its applicability is a significant one.

Moreover, because Ms. Ceasar's conduct following her release from prison on July 28, 2020 forms the basis of much of the government's sentencing argument and (apparently) of Probation's sentencing recommendation, even as to Dockets 17-cr-48 and 19-cr-117, it is critical to understand whether that conduct actually violated any rule or law. If she was not on supervised release (as a legal matter) and her conduct during supervision should be "wiped out" as the Court of Appeals held in *Thomas*, then how should this Court view, under Section 3553(a), conduct that was contrary to the conditions of supervised release, but not inherently "bad" such as downloading social media, asking people to send her money, and speaking to people (primarily her own relatives) with criminal records? How to appropriately view her conduct from July 2020 until her re-imprisonment in August 2021 seems crucial to a fair sentencing determination, and one that we respectfully request additional time to brief in light of the recent withdrawal of the VOSR charges by Probation, in addition to the questions we raise above about whether the failure to appear conviction should stand.

Finally, while we have informed Ms. Ceasar, in the limited time available, of these newly-emerged issues, we do not believe she has had sufficient time to truly understand them.

Thank you for your consideration.

                                                                               Respectfully Submitted,
                                                                                   /s/
                                                                              Deirdre D. von Dornum
                                                                              Samuel I. Jacobson

                                                                    Federal Defenders of New York

cc:    all counsel of record (via ECF)
        U.S. Probation (via Email)